IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROBERT N. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:02CV839 |
| | ) | |
| TYCO INTERNATIONAL LTD., | ) | |
| TYCO INTERNATIONAL (US), INC., | ) | |
| TYCO ELECTRONICS, THE | ) | |
| RETIREMENT COMMITTEE OF | ) | |
| TYCO INTERNATIONAL (US), | ) | |
| INC., and AMP INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [Doc. #83] filed by Defendants Tyco International Ltd., Tyco International (US), Inc., Tyco Electronics, The Retirement Committee of Tyco International (US), Inc., and AMP, Inc. ("Defendants"). In the Motion for Summary Judgment, Defendants seek dismissal of the remaining claims asserted by Plaintiff Robert N. Hall ("Plaintiff"), a former employee of AMP, Inc., who was terminated in 1999 as part of a reduction in force when AMP, Inc. was acquired by Tyco International. The Court previously dismissed several of Plaintiff's claims on Defendants' Motion to Dismiss, and the Court's Memorandum Opinion [Doc. #38] details the factual background in this case. Following that ruling, Plaintiff's remaining claims were transferred to the United States District Court for the District of New Hampshire for inclusion in the coordinated or consolidated pre-trial proceedings in In Re Tyco International, Ltd., Multidistrict Litigation (MDL 1335). When the Multi-District pre-trial proceedings were completed, the case was remanded back to this

Court. Following a status conference, the Court allowed the parties an opportunity to file dispositive motions with respect to the remaining claims, and Defendants' Motion for Summary Judgment has now been fully briefed and is ready for review.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S. Ct. 2505, 2510-11 (1986); Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 817 (4th Cir. 1995). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913; Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Anderson, 477 U.S. at 248-49, 106 S. Ct. at 2510.

In the present case, Plaintiff currently has four remaining claims, designated as Claim 2, Claim 6, Claim 7 and Claim 8. Claim 2 involves Plaintiff's allegation that Defendants failed to keep his Tyco Retirement Savings Investment Plan (RSIP) account fully invested during a "blackout" period while the account was being transferred from The Vanguard Group ("Vanguard") to Fidelity Investments ("Fidelity"), and as a result cost him $3,941.40. Claim 6 involves Plaintiff's allegation that he was wrongfully denied a "lump sum distribution" from the AMP Pension Plan. Claim 7 involves Plaintiff's allegation that Defendants breached a contractual obligation to provide him 18 months of medical, dental, and vision insurance. Finally, Claim 8 involves Plaintiff's allegation that he was damaged by Defendants' securities fraud.

The Court will consider each of these claims in turn. Before doing so, however, the Court notes that Plaintiff contends that summary judgment is not appropriate at this time because he has not had an adequate opportunity for discovery. In this regard, the parties agree that there has been no separate discovery order established by this Court. However, this action was transferred for pre-trial proceedings in the Multi-District Litigation, and as part of the Multi-District Litigation, discovery was conducted, including discovery with respect to all of Plaintiff's remaining claims. That discovery included document production by Defendants and a deposition of Plaintiff. Fact and expert discovery closed as part of that proceeding. Plaintiff acknowledges that as part of this process, discovery occurred with respect to his claims that were common to the Multi-District Litigation, as well as his claims that were not common to the Multi-District Litigation. Indeed, Plaintiff acknowledges that he received interrogatories and

requests for production of documents with respect to all of his claims, and that he responded to those interrogatories and requests for production. Plaintiff also concedes that the plaintiffs' class counsel in the Multi-District Litigation prepared interrogatories and requests for production on Plaintiff's behalf, and Defendants responded to Plaintiff's interrogatories and requests for production of documents on September 12, 2007. These interrogatories and requests for production from Plaintiff related to Claim 2, Claim 6, and Claim 7, which were not common to the Multi-District Litigation. In addition, Plaintiff's deposition covered the securities claims as well as Claims 2, 6 and 7. Plaintiff nevertheless contends that additional discovery remains. However, Plaintiff had the opportunity to request additional discovery as part of the discovery process in the Multi-District Litigation, and the discovery that was conducted clearly included the claims that were not common to the Multi-District Litigation. To the extent that Plaintiff contends that Defendants failed to fully respond to his discovery requests, the Court notes that Defendants did respond to the interrogatories and document production requests, and to the extent Plaintiff contested the fullness of Defendants' response, those were matters to be raised with the Multi-District Court which was overseeing discovery at that time.[1] Therefore, while the Court acknowledges that "summary judgment is appropriate only after adequate time for discovery," Evans, 80 F.3d at 961 (internal quotation omitted), Plaintiff here has been given adequate opportunity for discovery, and Defendants' Motion for Summary

---

[1] Plaintiff contends that he did not raise these discovery issues with the Multi-District Court because he was afraid Defendants would request oral argument and it would have been "too burdensome" for him to travel to appear in that Court. However, the Judge in the Mult-District Litigation routinely held telephone hearings, and Plaintiff did not even attempt to pursue his options during the discovery period.

4

Judgment is properly before the Court for review. Although Plaintiff is *pro se*, he – like every other litigant – has the burden of pursuing any necessary discovery and presenting sufficient evidence in support of his claims. The Court will therefore consider whether summary judgment is appropriate with respect to Plaintiff's remaining claims, that is, Claims 2, 6, 7 and 8.

First, with respect to Claim 2, Plaintiff alleges that he incurred $3,941.40 in damages as a result of Defendants' failure to keep his accounts fully invested for a 24-hour period when the AMP Employee Savings and Thrift Plan and Tyco RSIP accounts were transferred from Vanguard to Fidelity. Plaintiff has presented his own calculations in an attempt to establish that his RSIP accounts were transferred from the Vanguard funds on January 31, 2000 at 4:00 p.m., but that the purchase of Fidelity funds did not occur until the next day, February 1, 2000, at 4:00 p.m. Because the Fidelity funds rose slightly during the period from 4:00 p.m. on January 31 to 4:00 p.m. on February 1, Plaintiff contends that he was damaged in the amount of $3,941.40 by not being invested in Fidelity immediately on January 31. However, Plaintiff has failed to present any competent evidence to support these contentions. Moreover, even if the Court accepts Plaintiff's personal calculations as evidence on this point, Plaintiff has not established either a breach of fiduciary duty or a breach of the relevant Plan terms to establish a claim under ERISA § 502(a)(1)(B) or § 502(a)(3). See 29 U.S.C. § 1132(a); see also Order dated July 27, 2004 (discussing at length the provisions of 29 U.S.C. § 1132(a)). In this regard, Plaintiff does not dispute that Defendants had a right to switch the RSIP from Vanguard to Fidelity. Plaintiff nevertheless contends that in a benefits mailing, he was informed that his accounts would

"remain fully invested throughout the blackout period," that is, during the two month period from January 21, 2000 through mid-March 2000 when the transfer was being made. However, Plaintiff does not dispute that his accounts did, in fact, remain fully invested for all of that two month period except, at most, for the 24-hour administrative period when the actual transfer out of Vanguard and into Fidelity occurred. Plaintiff has failed to present any expert opinion, industry standards or any other basis to establish that any Plan terms or fiduciary duty would be violated by a single, brief period in which the accounts were temporarily out of the market as part of the administrative transfer of funds from Vanguard to Fidelity. Therefore, the Court concludes that Plaintiff has failed to present any evidence to establish a claim for violation of the plan terms or breach of fiduciary duty to support a claim under ERISA § 502(a)(1)(B) or § 502(a)(3), and summary judgment is appropriate with respect to Claim 2.

With respect to Claim 6, Plaintiff alleges that he was entitled to receive a lump sum distribution under the AMP Pension Plan in or about April 1999. This is a claim pursuant to ERISA § 502(a)(1)(B) to recover benefits due under the terms of the Plan. However, the Plan document clearly sets out the criteria for the receipt of a lump sum payment, and Plaintiff has admitted that he does not meet the criteria. Plaintiff also admitted that he cannot identify a single employee who received a lump sum payment when they did not meet the criteria set out in the Plan document. Although Plaintiff contends that he needs additional discovery in order to determine who received lump sum payments, the Court concludes that Plaintiff is not entitled to a lump sum distribution unless the terms of the Plan provide for one, as discussed in the Court's July 27, 2004 Order. In addition, although Plaintiff contends that the criteria in the Plan

6

are "arbitrary," Plaintiff is not entitled to change the Plan terms. Having considered the evidence presented, the Court concludes that Plaintiff has presented no evidence that would support his claim that he was entitled to a lump sum distribution under the terms of the Plan, and therefore summary judgment is proper with respect to Claim 6.

With respect to Claim 7, Plaintiff asserts that Defendants entered into a contract with him on February 8, 2000, to provide him with eighteen (18) months of medical, dental, and vision insurance. In their Motion for Summary Judgment, Defendants contend that Plaintiff has not identified any such contract or presented any evidence establishing the existence of such a contract in order to support this claim. In Response, Plaintiff points to his termination letter, which states that "[c]onditional upon signing the enclosed release, your medical, dental, and vision insurance will continue for 18 months, provided you pay any applicable premium at the active employee rate." However, Defendants have presented evidence to establish that Plaintiff never provided a signed release nor did he pay any premiums. As provided in the termination letter, if Plaintiff did not sign the release, Plaintiff was entitled to health care coverage for the number of weeks of severance to which he was entitled, which was 40 weeks. Plaintiff has admitted in his deposition that he received the coverage for 40 weeks. However, Plaintiff has not presented any affidavit or other assertion to establish that he signed the release and paid the premiums in order to obtain the 18 months of coverage. Therefore, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact on his breach of contract claim, and the Court concludes that summary judgment is appropriate with respect to Claim 7.

Finally, with respect to Claim 8, Plaintiff alleges securities fraud and asserts a claim under

Section 10(b) of the Securities Exchange Act. 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. With respect to this claim, Plaintiff alleges that he purchased Tyco common stock and stock fund shares between February 2001 and July 2002, and Plaintiff seeks to recover the difference between the value of his Tyco holdings at the beginning of the "defined period" and the value of those holdings at the end of the defined period, plus punitive damages. However, on December 19, 2007, while this case was pending with the District of New Hampshire Multi-District Litigation, that Court entered a Final Order Approving Settlement, Plan of Allocation and Attorneys' Fees and Expense Reimbursement Request in the Tyco Securities Litigation. That Order approved a settlement between the "Class" and several defendants including Tyco International. The "Class" consisted of "all persons and entities who purchased or otherwise acquired Tyco Securities from December 13, 1999 through and including June 7, 2002, and who were damaged thereby." Under the terms of the Order, "any and all Class Members (including those Class Members who are parties to any other litigation, arbitration or other proceedings against, or have any Claim against the Tyco Settling Defendants' Releasees . . . ) shall be deemed to have, and by operation of law and of this Order shall have fully, finally, and forever released, relinquished, settled, and discharged: (a) all Released Claims against any and all of the Tyco Settling Defendants' Releasees . . . ." "Released Claims" includes any and all Claims that were asserted in the MDL or that could have been asserted in the MDL or in any other forum which "arise out of, relate to, or are based upon the subject matter, allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, or referred to in the Complaint and which relate to the purchase, acquisition, sale or retention of Tyco Securities."

Plaintiff contends that he is not covered by this settlement because his claims include the period from February 2001 through July 2002, while the class period covers only December 1999 through June 7, 2002. Thus, Plaintiff apparently contends that he is not covered by the class settlement as to stock purchases for the one-month period between June 7, 2002 and July 2002. However, Plaintiff has not presented any evidence that he purchased stock between June 7, 2002 and July 2002, and in fact the only evidence presented by Plaintiff shows a stock purchase in March 2001, which falls directly within the class period and brings Plaintiff within the class of investors covered by the class settlement.[2] Plaintiff did not submit a request for an exclusion from the class settlement as part of the MDL proceeding, and the settlement therefore covers Plaintiff's securities fraud claims.

Plaintiff nevertheless contends that even if he is part of the class, he is not bound by the settlement because he did not receive formal notice of the settlement. However, Plaintiff was a party to a case within the Multi-District Litigation and was participating in the Multi-District Litigation, and therefore Plaintiff had ample opportunity to determine his position and protect his rights in that proceeding. Plaintiff acknowledges that his case was a part of that proceeding,

---

[2] In his deposition in 2007, Plaintiff stated that "I may modify my defined period based on what the lead security plaintiffs establish." Thus, Plaintiff apparently understood that his claims were coextensive with the claims in the class action, and that his dates were not precise and were instead subject to change based on the ongoing discovery in the class action. In fact, in his deposition, Plaintiff admitted that he came up with the ending date of July 2002 generally based on "when I knew or felt like I knew, looking back on it, that that was – all the bad news was out at that point . . . [and] [e]verything was out in - in front in terms of public information." Although Plaintiff did not ultimately modify his "defined period," Plaintiff has not presented any evidence to support a separate claim for the one-month period from June 7, 2002 to July 2002.

9

and Plaintiff does not contend that he was actually unaware of the class settlement. Therefore, the proper forum for Plaintiff to determine his rights and options was in that Multi-District proceeding, while his case was pending there and the settlement proceedings were ongoing. Defendants did not mislead Plaintiff or in any way thwart his ability to determine his status and rights under the settlement. In fact, Defendants notified Plaintiff as early as February 11, 2008, that they considered his claims for securities fraud to have been dismissed by the class action settlement, and Plaintiff did not attempt to raise or dispute that issue with the Multi-District Court where his case was then pending. Finally, and in any event, the Court finds that the Settlement Notice provided by the Multi-District Court was sufficient to satisfy due process and was reasonably calculated to provide interested parties with notice and an opportunity to object. Therefore, in these circumstances, the Court concludes that Plaintiff is bound by the class settlement and as a result his claims for securities fraud have been released. As such, Plaintiff's Claim 8 for securities fraud is properly dismissed.

For all of the reasons set out above, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's remaining claims, and Defendants' Motion for Summary Judgment will therefore be granted.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. #83] is GRANTED, and all of Plaintiff's remaining claims will be dismissed.

A Judgment will be entered contemporaneously herewith.

This, the 9th day of September, 2010.

United States District Judge